**BARRY J. GOEHLER, OSB No. 044785**
E-mail address: bgoehler@travelers.com
**GOEHLER & ASSOCIATES**
4000 Kruse Way Place
Building 1, Suite 290
Lake Oswego, OR 97035
Phone: 503.534.4518
Fax: 855.827.7901
Attorney for THE PHOENIX
INSURANCE COMPANY

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| THE PHOENIX INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE CINCINNATI INSURANCE COMPANY,<br><br>Defendant. | Case No.:  3:23-cv-00535<br><br>**COMPLAINT** |

Plaintiff THE PHOENIX INSURANCE COMPANY alleges and avers as follows:

### THE PARTIES

1.     Plaintiff The Phoenix Insurance Company ("Phoenix") is, and at all relevant times was, an insurance company organized under the laws of the State of

Connecticut, having its principal place of business in Connecticut, and is and was at all times mentioned herein qualified to do business in Oregon.

2.      Phoenix is informed and believes that Defendant The Cincinnati Insurance Company ("Cincinnati") is, and at all relevant times was, an insurance company organized under the laws of the State of Ohio, having its principal place of business in the State of Ohio, is and was at all times mentioned herein qualified to do business in Oregon.

## JURISDICTION AND VENUE

3.      This Court has original jurisdiction under 28 U.S.C. § 1332 because this is a civil action between citizens of different states in which the matter in controversy is in excess of seventy-five thousand dollars ($75,000.00), exclusive of costs and interests.

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this district.

## BACKGROUND FACTS

### The Phoenix Policy

5.      Phoenix issued policy number to DT-CO-3H671023-PHX-19 to Emery & Sons Construction Northwest, LLC, with effective dates of July 1, 2019 to July 1, 2020 (the "Phoenix Policy").  Emery & Sons Construction Group, LLC ("ESCC") is also named as an insured under the Phoenix Policy.  The Phoenix Policy provides that the insurance provided to ESCC is excess over any other insurance that is available to ESCC when ESCC is an additional insured under another insurance policy.

**Goehler & Associates**
**P.O. Box 64093**
**St. Paul, MN 55164-0093**
**Main: 503.534.4401**
**Fax: 855.827.7901**

**The Underlying Action**

6.      On February 1, 2022, Seth Long ("Long"), the duly appointed and acting

personal representative for the Estate of Donald Edward Long Jr. ("Decedent"), filed an

action entitled *Seth Long v. Emery & Sons Construction Group, LLC., et al*., in the

Circuit Court of the State of Oregon, County of Multnomah, Case No. 22CV03909 (the

"Underlying Action"), alleging causes of action for employer liability laws, negligence

per se, and negligence against ESCC and Ponderosa Ridge Development, LLC.  A true

and correct copy of the Complaint in the Underlying Action is attached as Exhibit 1.

7.      In the Underlying Action, Long alleges that Decedent was an employee of

A B Utility Contractors, Inc. ("ABUC"), a subcontractor of ESCC for the Ponderosa

Ridge development located in Corvallis, Benton County, Oregon (the "Project").  Long

alleges that ESCC was the general contractor for the Project.

8.      Long alleges that on or about December 5, 2019, Decedent was working to

excavate and install catch basins along a new road that was being constructed as part of

the Ponderosa Ridge development when one of Decedent's co-workers was operating a

backhoe which struck and injured Decedent.  Decedent allegedly died that day.

9.      Long alleges that the negligence and/or fault of the defendants in the

Underlying Action caused and/or contributed to the death of Decedent.

10.      Long is seeking in excess of $15,000,000 in damages in the Underlying

Action.

**The Subcontract**

11.      Phoenix is informed and believes that ESCC and ABUC entered into a

Subcontract Agreement dated May 24, 2019 in connection with some concrete related

**Goehler & Associates**
**P.O. Box 64093**
**St. Paul, MN 55164-0093**
**Main: 503.534.4401**
**Fax: 855.827.7901**

work in connection with the Project (the "Subcontract").

      12.     The Subcontract provides in relevant part:

      **15.8. Additional Insured**. Subcontractor shall endorse its Commercial General Liability, Comprehensive Automobile Liability, Umbrella/Excess Liability and all other insurance policies (except workers' compensation) to add Contractor and Owner as "additional insured's," and to contain severability of interest clauses, all with respect to potential liability arising out of (a) operations performed for Contractor or Owner by Subcontractor, (b) acts or omissions of Contractor or Owner in connection with general supervision of Subcontractor's operations, (c) completed operations of Subcontractor, (d) claims for bodily injury or death brought against Contractor or Owner by Subcontractor's employees, or the employees of Subcontractor's subcontractors of any tier, however caused, related to the performance of operations or related to completed operations under the Contract Documents. The Additional Insured endorsements must apply to both ongoing and completed operations. … Such insurance afforded to Contractor and Owner as Additional Insureds under Subcontractor's policies shall be primary insurance and not excess over, or contributing with, any insurance purchased or maintained by Contractor or Owner, and Contractor's and Owner's insurance will be excess of all applicable underlying and collectible insurance required in this Section. The obligations arising under this Subsection, including the duty to defend, shall apply regardless of Subcontractor's or its carrier's right to indemnity, contribution, or subrogation.

**The Cincinnati Policy**

      13.     Phoenix is informed and believes that Cincinnati issued a policy to ABUC under policy number EPP0329469, with effective dates of June 1, 2018 to June 1, 2021 (the "Cincinnati Policy").

      14.     Phoenix is informed and believes that the Cincinnati Policy contains the following provisions:

      9.     Automatic Additional Insured —Specified Relationships

          a.     The following is hereby added to SECTION II —WHO IS AN INSURED:

**Goehler & Associates**
**P.O. Box 64093**
**St. Paul, MN 55164-0093**
**Main: 503.534.4401**
**Fax: 855.827.7901**

(1)     Any person or organization described in Paragraph 9.a.(2) below (hereinafter referred to as additional insured) whom you are required to add as an additional insured under this Coverage Part by reason of:

    (a)     A written contract or agreement; or

    (b)     An oral agreement or contract where a certificate of insurance showing that person or organization as an additional insured has been issued,

is an insured, provided:

    (a)     The written or oral contract or agreement is:

        1)     Currently in effect or becomes effective during the policy period; and

        2)     Executed prior to an "occurrence" or offense to which this insurance would apply; …

* * *

(2)     Only the following persons or organizations are additional insureds under this endorsement, and insurance coverage provided to such additional insureds is limited as provided herein:

* * *

    (f)     For "your work" performed in Oregon, any person or organization with which you have agreed per Paragraph 9.a.(1)above to provide insurance, but only to the extent that the liability is caused by "your work" performed for that additional insured and only to the extent that such liability is caused by your negligence or the negligence of those acting on your behalf. …

* * *

**Goehler & Associates**
**P.O. Box 64093**
**St. Paul, MN 55164-0093**
**Main: 503.534.4401**
**Fax: 855.827.7901**

      c.      SECTION IV —COMMERCIAL GENERAL LIABILITY CONDITIONS is hereby amended as follows:

      (1)      Condition 5. Other Insurance is amended to include:

      (a)      Where required by a written contract or agreement, this insurance is primary and / or noncontributory as respects any other insurance policy issued to the additional insured, and such other insurance policy shall be excess and / or noncontributing, whichever applies, with this insurance.

**Tender to Cincinnati**

15.      Phoenix retained defense counsel to defend ESCC against the Underlying Action, pursuant to the Phoenix Policy, and has incurred attorneys' fees and costs in defending ESCC.

16.      Pursuant to the terms of the Cincinnati Policy, ESCC qualifies as an additional insured in connection with the Underlying Action.

17.      Tenders were issued for the defense and indemnification of ESCC as an additional insured on the Cincinnati Policy.

18.      Cincinnati has refused to defend ESCC on a primary basis without any contribution from Phoenix, as required pursuant to the Cincinnati Policy.

**FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF**

19.      Phoenix realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 18 inclusive, as though fully set forth herein.

20.      An actual and justiciable controversy has arisen between Phoenix and Cincinnati in that Cincinnati contends, and Phoenix disputes, that Phoenix is obligated to participate in the defense of ESCC in connection with the Underlying Action.

**Goehler & Associates**
**P.O. Box 64093**
**St. Paul, MN 55164-0093**
**Main: 503.534.4401**
**Fax: 855.827.7901**

21.    Phoenix seeks a judicial determination that Cincinnati is obligated to defend and indemnify ESCC in the Underlying Action on a primary basis without any contribution from Phoenix.  Phoenix also seeks a judicial determination that its obligation, if any, to defend and indemnify ESCC in the Underlying Action is excess to all coverage provided by Cincinnati.

22.    Phoenix requests that the Court resolve the present and actual controversy between the parties by issuing a judgment declaring the rights and obligations of the parties with regard to their respective insurance policies.

23.    Phoenix further requests a declaration of rights, duties and/or obligations of the parties as otherwise appropriate, and for judgment for any amount as may be appropriate.

## SECOND CAUSE OF ACTION FOR EQUITABLE INDEMNITY

24.    Phoenix realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 23, inclusive, as though fully set forth herein.

25.    Cincinnati is obligated to defend and indemnify ESCC against the Underlying Action on a primary basis without any contribution from Phoenix but has refused to do so.

26.    Phoenix is entitled to reimbursement and indemnification of all defense fees and costs incurred on behalf of ESCC in the Underlying Action because Cincinnati's obligation to ESCC is primary to Phoenix's obligation.

**Goehler & Associates**
**P.O. Box 64093**
**St. Paul, MN 55164-0093**
**Main: 503.534.4401**
**Fax: 855.827.7901**

**THIRD CAUSE OF ACTION FOR EQUITABLE CONTRIBUTION**

27.     Phoenix realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 26, inclusive, as though fully set forth herein.

28.     Pursuant to the Cincinnati Policy, Cincinnati owes defense and indemnity to ESCC in connection with the Underlying Action on a primary basis without any contribution from Phoenix.

29.     Cincinnati has refused to reimburse Phoenix for the defense fees and costs Phoenix has incurred on behalf of ESCC in connection with the Underlying Action. Phoenix is therefore entitled to contribution and reimbursement from Cincinnati in an amount to be proven at trial.

**PRAYER**

WHEREFORE, Phoenix prays for judgment as follows:

1.     For a judicial determination that Cincinnati is obligated to defend and indemnify ESCC in the Underlying Action on a primary and non-contributory basis;

2.     For a judicial determination that Phoenix's obligation, if any, to defend and indemnify ESCC in the Underlying Action is excess to all coverage provided by Cincinnati;

3.     For equitable indemnity against Cincinnati for the defense fees and costs incurred by Phoenix in connection with the Underlying Action, plus interest;

4.      In the alternative, for equitable contribution and apportionment against Cincinnati of the defense fees and costs incurred by Phoenix in connection with the Underlying Action, plus interest;

**Goehler & Associates**
**P.O. Box 64093**
**St. Paul, MN 55164-0093**
**Main: 503.534.4401**
**Fax: 855.827.7901**

5.      For costs of suit incurred herein; and

6.      For such other and further relief as the Court may deem just and proper.


DATED this Wednesday, April 12, 2023.

GOEHLER & ASSOCIATES


_____/s/ Barry J. Goehler_____
Barry J. Goehler, OSB No. 044785
Of Attorneys for Plaintiff THE PHOENIX
INSURANCE COMPANY

**Goehler & Associates**
**P.O. Box 64093**
**St. Paul, MN 55164-0093**
**Main: 503.534.4401**
**Fax: 855.827.7901**

# EXHIBIT

# 1

1
2
3
4                    **IN THE CIRCUIT COURT OF THE STATE OF OREGON**
5                         **FOR THE COUNTY OF MULTNOMAH**
6

| | |
|---|---|
| 7  **SETH LONG,** Personal Representative of the Estate of **DONALD EDWARD LONG JR.,** Deceased, | Case No. |
| 9              Plaintiff, | **COMPLAINT** (Wrongful Death – Employer Liability Law – Oregon Safe Employment Act – Negligence) |
| 10        v. | JURY TRIAL REQUESTED |
| 11  **EMERY & SONS CONSTRUCTION GROUP, LLC.**, an Oregon Limited Liability Company, **PONDEROSA RIDGE DEVELOPMENT, LLC**, an Oregon Limited Liability Company, | Claim not subject to mandatory arbitration |
| 14              Defendant. | Prayer amount: $15,851,590.00 Fee - $1,178.00 (ORS 21.160) |

15
16                              **COMMON ALLEGATIONS**
17                                       1.
18       At all times mentioned:

19   a)   Seth Long is the duly appointed and acting Personal Representative for the Estate of Donald Edward Long Jr., deceased, pursuant to a Limited Judgment dated October 26th, 2020, entered in the Circuit Court of the State of Oregon for the County of Linn, Probate Department Case No. 20PB07487.

22   b)   Decedent was survived by Patricia Holley, mother, and Seth Long, son.

23   c)   Defendant Emery & Sons Construction Group, LLC ("Emery & Sons") was a general contractor licensed to do business in the State of Oregon, conducting regular, sustained business in Multnomah County, Oregon. Defendant was the general contractor for the "Ponderosa Ridge" development, located in Corvallis, Benton County, Oregon.

25   d)   Defendant Ponderosa Ridge Development, LLC ("PRD") was an Oregon Limited Liability Company engaged in the business of real estate development, licensed to do business in the State of Oregon, conducting regular, sustained business activity in Multnomah County, with a Registered Agent residing in Multnomah County, Oregon. Defendant PDR was the owner and developer of the Ponderosa Ridge development.

e) Decedent Donald Long was an Oregon resident and employee of A B Utility Contractors Inc., a subcontractor of Defendant Emery & Sons for the Ponderosa Ridge project.

2.

On or about December 5th, 2019, decedent and two co-workers were working to excavate and install catch basins along a new road that was being constructed as part of the Ponderosa Ridge development.  One of decedent's co-workers was operating a backhoe, another a dump truck. Decedent's role was as a "ground person." While repositioning the backhoe, the operator used the boom arm to lift the rear of the backhoe to adjust it to the desired location. When the operator went to relieve the pressure on the boom and lower the backhoe onto the ground, the stored energy in the boom arm took over and jolted the arm to the north, striking decedent between the hips and rib cage, crushing and pinning him against the dump truck.

3.

Decedent did not immediately die. After the boom was removed, decedent took two steps and collapsed to the ground. At 8:41 am, his co-workers called 911. When the paramedics arrived at 8:48 am, decedent's eyes were open and he was breathing. When the paramedics attempted to move decedent to a backboard, he became combative and needed to be physically restrained. En route to the hospital, he was intubated. Upon arrival to the hospital at 9:09, decedent was still alive. At 9:23 am, an emergency thoracotomy was initiated due to decedent's loss of pulse. At 9:30 am, decedent's blood oxygenation level was 74%. By 10:02 am, he was dead.

4.

The negligence and/or fault of defendants, and each of them, in one or more of the particulars set forth herein, was a substantial factor in causing, contributing to, and/or enhancing the following injuries, and ultimately the death of decedent:

a) Blunt force trauma to the chest;

b) Nonsurvivable inferior vena cava injury;

c) Blowing pulmonary laceration;

d)      Traumatic hemothorax;

e)      Multiple fractures of ribs, left side; and

f)      Full thickness L biceps laceration.

5.

The negligence and/or fault of defendants, and each of them, in one or more of the particulars set forth herein, was a substantial factor in causing decedent to incur pain, suffering, and profound existential terror prior to his death, thereby entitling the estate to an aware of noneconomic damages in a reasonable amount to be awarded by a jury, but not to exceed $5,000,000.

6.

The negligence and/or fault of defendants, and each of them, caused the beneficiaries of the estate, Seth Long, son, and Patricia Holley, mother, to suffer the loss of society and companionship of decedent, entitling the estate to an award of noneconomic damages in a reasonable amount to be awarded by the jury, but not to exceed $10,000,000.

7.

The negligence and/or fault of defendants, and each of them, in one or more of the particulars set forth herein, caused the estate to incur a pecuniary loss on behalf of decedent in the approximate sum of $100,000.00 for the decedent's loss of earnings to date, and the approximate sum of $750,000.00 for the loss of services and financial support to the beneficiaries and pecuniary loss to the estate, and for the decedent's lost wages and the loss of future earning capacity.

8.

The negligence and/or fault of defendants, and each of them, in one or more of the particulars set forth herein, caused the estate to incur the sum of $1,590.00 for the reasonable burial and funeral expenses of decedent.

//

//

//

1

## CLAIMS FOR RELIEF

## FIRST COUNT

Employer Liability Law - Violation of ORS 654.305

9.

The work decedent was engaged in was work involving risk or danger.

10.

At the time of decedent's injury and death, his employer and defendants, and each of them, were engaged in a common enterprise within the meaning of the Employer Liability Law in that plaintiff's employer and one or all of the defendants were each engaged in work which would result in the completion of the above-described construction project and defendants, and each of them, had control of and responsibility for the risk producing activity or condition.

11.

At the time of decedent's injury and death, defendants, and each of them, retained the right to control the work or instrumentality causing harm to plaintiff.

12.

At the time of decedent's injury and death, defendants, and each of them, actually controlled the work or instrumentality causing harm to plaintiff.

13.

At the time of decedent's injury and death, defendants, and each of them, were negligent in failing to use every device, care and precaution which was practicable to use for the protection and safety of employees.  Specifically, defendants, and each of them, were negligent in one or more of the following particulars:

   a)   In failing to provide any or adequate training to workers at the Ponderosa Ridge development in general, and to decedent and his co-workers in particular, regarding swing radius hazards present when a backhoe-loader is in operation;

   b)   In failing to provide any or adequate training to workers at the Ponderosa Ridge development in general, and to decedent and his co-workers in particular, regarding struck-by and pinch/crush hazard areas within the swing radius of a backhoe-loader;

c)      In failing to provide any or adequate training to workers at the Ponderosa Ridge development in general, and to decedent and his co-workers in particular, regarding erecting and maintain control lines, warning lines, or warning signs identifying hazards within the swing radius of a backhoe-loader;

d)      In failing to provide any or adequate training to workers at the Ponderosa Ridge development in general, and to decedent and his co-workers in particular, to ensure that when an employee goes to a location within the swing radius hazard area out of view of the operator, the employee informs the operator that he or she is going to that location;

e)      In failing to provide any or adequate training to workers at the Ponderosa Ridge development in general, and to decedent and his co-workers in particular, regarding the hazards of stored energy when repositioning a backhoe loader with the boom arm;

f)      In failing to ensure, in the absence of its own training programs, that workers at the Ponderosa Ridge development in general, and decedent and his co-workers in particular, were adequately trained regarding the subjects identified above in (a) through (e);

g)      In failing to ensure that the operator of the backhoe-loader was properly trained in its operation and the hazards and procedures associated with its use;

h)      In failing to permit only properly trained personnel to operate equipment;

i)      In failing to do a Job Hazard Analysis relating to the catch basin work, which would have identified the reasonably foreseeable hazards associated with the work, including pinch-points;

j)      In failing to enforce its own policies regarding hazards, equipment operation, and pinch-points;

k)      In failing to see that the jobsite was inspected by a qualified inspector and remedy deficiencies or unsafe conditions which would be found by such an inspection.

14.

As a result of the negligence of defendants, and each of them, plaintiff was injured as alleged herein and damaged as alleged herein.

15.

Defendants' negligent acts constitute violations of ORS 654.305.

//

//

//

//

## SECOND COUNT

Employer Liability Law – Violation of ORS 654.310

16.

Plaintiff incorporates paragraphs 9-12 herein.

17.

Defendants, and each of them, violated one or more of the following rules and regulations made as prescribed by the Oregon Department of Consumer and Business Services, the violation of which caused the injury and death of decedent:

a)     Defendants required decedent to work in surroundings or under working conditions were hazardous or dangerous to his health and safety in violation of 29 CFR §1926.20(a)(1);

b)     Defendants failed instruct each employee, including decedent, in the recognition and avoidance of unsafe conditions in violation of 29 CFR §1926.21(b)(2);

c)     Defendants failed to implement or enforce an accident prevention program and to see that all workers are instructed and supervised in the safe operation of equipment and processes, in violation of OAR 437-001-0760 and 29 CFR §1926.20(b)(1); and

d)     Defendants failed to see that the place of employment was inspected by a qualified person, and failed to remedy unsafe conditions found or which should have been found by such inspection, in violation of OAR 437-001-0760(7) and 29 CFR §1926.20(b)(2).

18.

Violations of those regulations constituted a violation of ORS 654.310.

19.

These regulations were passed to protect individuals in the status of decedent and were passed to prevent the type of accident which decedent suffered.

## THIRD COUNT

Negligence Per Se – Violation of Oregon Safe Employment Act

20.

Plaintiff incorporates paragraphs 17-19 herein.

//

21.

At all material times, defendants, and each of them, were employers in charge of and responsible for the work involving a risk or danger to plaintiff. The worksite at which plaintiff was working was a "place of employment" as defined in ORS 654.005(8), part of the Oregon Safe Employment Act ("OSEA"). The worksite was a fixed or movable place where an employee worked temporarily or permanently, where a process, operation, or activity related, either directly or indirectly, to an employer's industry, trade, business, or occupation.

21.

Defendants, and each of them, were owners, as that term is defined is ORS 654.005(6), in that each of them had ownership, control, and/or custody of that location.

22.

Defendants, and each of them, were employers, as that term is defined in ORS 654.005(6), in that each of them had one or more employees.

23.

By violating one or more of the safety codes set forth in paragraph 14 above, defendants, and each of them failed, to comply with every order, decision, direction, standard, rule, or regulation made or prescribed by the department in connection with the materials specified in ORS 654.001-654.295 and 654.750 to 654.780, or in any way relating to or affecting places of employment and failing to do everything necessary or proper in order to secure compliance with and observance of every such order, decision, direction, standard, rule or regulation, as required by ORS 654.022.

24.

As a result of defendants' violations of the OSEA in one or more of the particulars above, plaintiff suffered the injuries alleged above.

//

//

//

//

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FOURTH COUNT**

<u>Negligence</u>

25.

Defendants were negligent as alleged in paragraph 13 above.

26.

As a foreseeable result defendants' negligence, plaintiff suffered the injuries alleged above.


WHEREFORE, plaintiff prays for a judgment in the amounts alleged above and for his costs and disbursements incurred herein.


Dated this 1st day of February, 2022.

_____

Joe Piucci, OSB No. 135325
Of Attorneys for Plaintiff
joe@piucci.com